# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADRIAN TERRELL DUNCAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-01378-PX |
| PRINCE GEORGE'S COUNTY, *et al.*, | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court is Defendant Mary Lou McDonough's Motion to Dismiss. ECF No. 10. Plaintiff Adrian Terrell Duncan has responded, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court DENIES the motion.

### I. Background[1]

Duncan has been detained at the Prince George's County Department of Corrections ("PGDOC") since June 7, 2016. ECF No. 1 ¶ 11. Throughout Duncan's detention, Defendant McDonough has been Director of the PGDOC. *Id.* ¶ 13. Employees of the PGDOC, including Correctional Officers and Emergency Response Team ("ERT") Officers, have targeted and attacked Duncan. *Id.* ¶¶ 46, 51, 56. In February of 2017, Officer Gray threw Duncan onto his bed and punched him, continuing to strike Duncan until the ERT team arrived to transport him for medical treatment. *Id.* ¶ 48. In April or May of 2017, Officers Jackson and Watkins also beat Duncan inside his cell, which was not equipped with a surveillance camera. *Id.* ¶¶ 52, 54. On December 22, 2017, Officer Jeter pushed Duncan while he was standing on a stairwell. *Id.* ¶ 61. Duncan fell, and Jeter dragged him down the stairs, "causing the back of Mr. Duncan's

---

[1] The following facts are taken from Duncan's Complaint. The Court accepts Duncan's well-pleaded allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

head to hit each step on the way down." *Id.* Jeter then punched Duncan in the face and body while Duncan remained handcuffed. *Id.* ¶ 62. Officer Thompson joined the attack, macing Duncan with oleoresin capsicum foam. *Id.* During this confrontation, "at least four of Mr. Duncan's dreadlocks were ripped from his scalp." *Id.* ¶ 68. Officers also orchestrated other attacks on Duncan by announcing to other detainees that Duncan was gay and a rapist. *Id.* ¶ 33. Such announcements provoked other detainees to threaten and physically assault Duncan. *Id.* ¶¶ 36–37. Corrections staff disregarded Duncan's attempts to receive adequate medical treatment and to file formal grievances concerning these attacks. *Id.* ¶¶ 83–89, 135–43.

Duncan's experience at the PGDOC is not singular. During the same time period, Officers beat numerous other detainees. Defendant Jeter attacked at least seven other detainees, including Stephon Alexander Robinson, Demetrice Littles, Anthony Davis, and Jovan Anthony Ali. *Id.* ¶ 78. Officers Reid, Cusseaux, Potter, Parsons, Igwe, Montgomery, and Tolbert each harmed Juan Alex Randolph, Jr., by beating him, macing him, leaving him bound in four-point restraints overnight and alone in his cell, and putting him into recreation with other detainees for whom a separation order had been put in place. *Id.* ¶¶ 74–77.[2] Officers Horn and Houston also beat and maced Steve Jamal Smith. *Id.* ¶ 73.

Despite the protracted pattern of violence initiated at the hands of PGDOC officers, PGDOC failed to discipline the officers adequately or provide sufficient training. *Id.* ¶¶ 74–78. Rather, as a consequence of these incidents, Defendants placed Duncan and others in solitary confinement for extended periods. *Id.* ¶¶ 28, 104, 106–08, 110, 112, 114, 118–19. In total, Duncan spent 22 of his 23 months at PGDOC in solitary confinement. *Id.* ¶ 100.

Additionally, Defendants, including McDonough, have systematically deprived detainees

---

[2] Corrections facilities use separation orders to keep detainees physically separated at all times for security concerns. *Danser v. Stansberry*, 772 F.3d 340, 343 n.1 (4th Cir. 2014).

of any meaningful grievance process to address officer misconduct. Detainees, including Duncan, have been given mis-information or no information about how to file formal grievances, were denied access to forms, and had their efforts to file grievances halted altogether by officers working in concert to upend the grievance process. ECF 1 at ¶¶ 128–43.

On May 11, 2018, Duncan filed his Complaint, alleging claims under 42 U.S.C. § 1983 for excessive force, failure to protect, and detention in inhumane conditions against the named Corrections and ERT Officers. *Id.* Duncan also filed suit against Prince George's County and McDonough, alleging that the above-described violations arose from the facility's unconstitutional policies, practices, and customs. *Id.* Duncan seeks compensatory and punitive damages, as well as attorneys' fees and costs. *Id.* On July 6, 2018, McDonough moved to dismiss the Complaint as to her. ECF No. 10.

**II.     Standard of Review**

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded allegations are accepted as true and viewed most favorably to the party pursuing the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "[C]onclusory statements or 'a formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

#### A. Failure to State a Claim

McDonough first argues that the claims brought pursuant to 42 U.S.C. § 1983 against her in her official capacity as director of the PGDOC fail as a matter of law. ECF No. 14 at 3. Section 1983 imposes liability upon a state actor who "'subjects, or causes to be subjected' an individual 'to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 202 (4th Cir. 2002) (quoting § 1983). Municipalities may be sued under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[U]nder *Monell*, a municipality is liable only for its *own* illegal acts." *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). Thus, a municipality is liable when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 554 (4th Cir. 2018) (quoting *Monell*, 436 U.S. at 694) (internal quotation marks omitted).

"[A] policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations . . . ." *Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984). "However, 'a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" *Garcia v. Montgomery Cty., Md.*, No. JFM-12-3592, 2013 WL 4539394, at *4 (D. Md. Aug. 23, 2013) (quoting *Milligan*, 743 F.2d at 230).

Duncan specifically contends that McDonough, as Director of the PGDOC, was "actually or constructively aware that a widespread policy, practice and/or custom has been in effect in

4

[PGDOC] due at least in part to the widespread nature and recurring frequency of such acts," and that she "condoned" this practice and custom by doing little or nothing to address the persistent pattern of brutality at the institution. ECF No. 1 ¶¶ 42–43, 71–72, 79, 125, 126. Duncan specifically names fifteen Officers who intentionally harmed seven named detainees as part of a "widespread" practice of "deliberately punish[ing] detainees in [maximum security housing] on a regular basis, including by beating and macing them." ECF No. 1 ¶ 69. Indeed, the Complaint weaves a sufficiently detailed tapestry of longstanding institutional violence at the hands of PGDOC officers, all of which supports the plausible inference that McDonough knew and endorsed the unconstitutional policy, practices, or customs animating the officers' conduct. The Complaint, in short, provides richer detail than others which survived challenge at the motion to dismiss stage. *See, e.g.*, *Garcia*, 2013 WL 4539394, at *5; *Morgan v. City of Rockville*, No. PWG-13-1394, 2013 WL 6898494, at *1 (D. Md. Dec. 30, 2013) ("Although quite sparse, the allegations in the Amended Complaint are sufficient to survive a motion to dismiss as they are 'enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

Duncan has stated a plausible claim that Director McDonough knew of and condoned an unconstitutional policy, practice, or custom sufficient to sustain *Monell* liability. The motion to dismiss is denied on this ground.

### B. Redundancy of Claims

McDonough next argues that the claims against her should be dismissed because they are "redundant and a waste of time." ECF No. 10-1 at 3. According to McDonough, because Duncan sued McDonough in her official capacity in addition to suing the County, the claims against her are "wholly unnecessary." *Id.* Official capacity suits "generally represent only

another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 237–38. Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Because claims against the official are "essentially a claim against" the government entity, courts have exercised discretion to dismiss the official when the entity is also sued. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Dismissal, however, is not required. *See Fink v. Richmond*, No. DKC 2007-0714, 2009 WL 3216117, at *4 (D. Md. Sept. 29, 2009), *aff'd*, 405 F. App'x 719 (4th Cir. 2010) (noting that suing individuals in their official capacity is "permissible" but redundant); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006) (affirming denial of motion to dismiss on the merits even though the claims were "duplicative"). Where "alleged violations of a plaintiffs' rights occurred because of specific individuals," permitting suit against individuals in their official capacities provides "a certain level of public accountability." *Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489–90 (E.D. Va. 2006); *see also Hurd v. Delaware State Univ.*, No. C.A.07-117-MPT, 2008 WL 4369983, at *3 (D. Del. Sept. 25, 2008) (quoting *Kennedy v. Hardiman*, 684 F. Supp. 540, 542–43 (N.D. Ill. 1988) ("By naming an individual in his official capacity, rather than merely naming the [entity] itself, a plaintiff focuses the attention of the parties, the court, and perhaps later the jury, on the particular official whom he seeks to hold responsible for implementing an allegedly unlawful . . . policy."); *Livingston v. Kehagias*, No. 5:16-CV-906-BO, 2017 WL 4126979, at *2 (E.D.N.C. Sept. 18, 2017). The Court agrees with Duncan that this is such a case.

The Complaint describes a prolonged pattern of violence occurring "behind locked doors

and shielded from the public view," and against detainees who are systematically made powerless and voiceless within the facility. ECF No. 14 at 6–7. With what can be described only as a sham grievance process at PGDOC, the Complaint depicts an institution where no relief is accorded to those who suffer repeated physical and emotional abuse at the hands of the officers. Based on this Complaint, robust in detail, McDonough, as Director and named defendant, is not inconsequential. The Court, in its discretion, denies McDonough's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, McDonough's motion to dismiss is denied. A separate Order follows.

December 18, 2018                                  /S/
Date                                                 Paula Xinis
                                                                           United States District Judge